EMN:CMP/WDS/BDM
F. #2013R01131

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against –

ERCAN FINDIKOGLU,
    also known as "Segate" and
    "Predator," and

████████████████████████

                Defendants.

- - - - - - - - - - - - - -X

<u>I N D I C T M E N T</u>



CR No. 13- 0440

(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 982(a)(2)(A), 982(a)(2)(B),
1029(a)(2), 1029(a)(5), 1029(b)(2),
1029(c)(1)(A)(i), 1029(c)(1)(A)(ii),
1029(c)(1)(C), 1030(a)(4), 1030(c)(3)(A),
1030(i)(1), 1344, 1349, 1512(k),
1956(a)(2)(A), 1956(h), 2 and 3551 <u>et seq.</u>;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

WEINSTEIN
MANN. M.J.

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment, unless otherwise indicated:

I.   <u>Overview of the Defendants' Cybercrime Schemes</u>

    1.    In or about and between January 2010 and July 2013, the defendants

ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ████████████

████████████████████████ together with others, led an international conspiracy to

attack the computer networks of financial service providers in the United States and elsewhere

by committing computer intrusions for the purpose of stealing and manipulating confidential

account information for financial gain.

2.     Specifically, the defendants ERCAN FINDIKOGLU and ███████
███████ together with others, used sophisticated intrusion techniques to gain unauthorized
access to – i.e., "hack" – the computer networks of at least three payment processors for
various types of credit and debit card transactions: Fidelity National Information Services, Inc.
("FIS"), ElectraCard Services ("ECS") and enStage (together, the "Victim Processors").
Upon gaining unauthorized access to these networks, FINDIKOGLU and ███████ together
with others, targeted Visa and MasterCard prepaid debit cards serviced by the Victim
Processors (the "Compromised Cards"), breached the security protocols that enforce
withdrawal limits on such cards, and then dramatically increased the account balances to allow
withdrawals far in excess of the legitimate card balances.   As a result of this effective
elimination of withdrawal limits, these attacks were known as "unlimited operations."
FINDIKOGLU and ███████ together with others, also obtained and manipulated various
forms of security credentials in the networks of the Victim Processors, including network
administrator privileges, as well as the personal identification numbers ("PINs") associated
with the compromised cards.

3.     After successfully manipulating the balances of the Compromised
Cards, the defendants ERCAN FINDIKOGLU and ███████████ together with others,
relied upon a trusted group of co-conspirators to disseminate the stolen financial information
globally via the Internet and other means to leaders of "cashing crews" around the world.   The
cashing crews consisted of individuals known as "cashers" or "cashiers."   The leaders of
these crews were responsible for planning, organizing and executing the unlimited operations,
in which the cashers conducted hundreds and even thousands of fraudulent transactions over a

matter of hours via automated teller machine ("ATM") withdrawals and fraudulent purchases using plastic cards encoded with stolen account information.  FINDIKOGLU and ███████ together with others, also distributed the PINs for the Compromised Cards and directed their co-conspirators worldwide in executing the fraudulent withdrawals.

        4.      Throughout the course of these activities, the defendants ERCAN FINDIKOGLU and ██████████ together with others, maintained unauthorized access to the Victim Processors' networks in order to monitor the withdrawal amounts and locations.  FINDIKOGLU and ██████ expected to be paid, and were paid, a significant portion of the illegal proceeds from these unlimited operations.  FINDIKOGLU and ██████ together with others, sent transaction logs obtained directly from the Victim Processors to their co-conspirators to show how much money had been withdrawn and, accordingly, how much money the defendants were owed.  FINDIKOGLU and ██████ received payment from the proceeds of the unlimited operations in various forms, including by wire transfer, electronic currency and the personal delivery of United States and foreign currency, among other means.  On multiple occasions, such payments were transported, transmitted and transferred from the United States to and through places overseas, including, but not limited to, Turkey, Romania and Ukraine.

II.    The FIS/American Red Cross Unlimited Operation

        5.      In or about February 2011, FIS, a payment processor based in Florida, was the victim of a network intrusion.  As a result, the defendants ERCAN FINDIKOGLU and ██████████ together with others, were able to obtain unauthorized access to an FIS prepaid debit card database, among other things.  FINDIKOGLU and ██████ together with

3

others, then breached security protocols and increased the withdrawals limits on over 20 prepaid cards issued by JPMorgan Chase and used by the American Red Cross to provide charitable relief funds to disaster victims (the "Compromised FIS Cards"). FINDIKOGLU and ▆▆▆▆ together with others, distributed the data for the Compromised FIS Cards to co-conspirators around the world and also provided the PINs for these cards. On or about and between February 27 and 28, 2011, the Compromised FIS Cards were used in approximately 15,000 transactions to withdraw approximately $10 million in at least 18 countries, including in the United States and, among other places therein, in the Eastern District of New York. This scheme is hereinafter referred to as the "FIS/American Red Cross Unlimited Operation."

6.    In online communications about the FIS/American Red Cross Unlimited Operation on or about March 5, 2011, the defendant ERCAN FINDIKOGLU stated that he had "control over all this."

7.    The defendants ERCAN FINDIKOGLU and ▆▆▆▆▆▆ were paid for the FIS/American Red Cross Unlimited Operation via wire transfer, among other methods.



III.    The ECS/RAKBANK Unlimited Operation

8.    In or about December 2012, ECS, a payment processor based in India, was the victim of a network intrusion. As a result, the defendants ERCAN FINDIKOGLU and ▆▆▆▆▆▆ together with others, were able to obtain unauthorized access to an ECS prepaid debit card database, among other things. FINDIKOGLU and ▆▆▆ together with

others, then breached security protocols and increased the withdrawals limits on prepaid cards

issued by the National Bank of Ras Al-Khaimah PSC, also known as "RAKBANK," located in

the United Arab Emirates (the "Compromised ECS Cards").   FINDIKOGLU and

together with others, distributed the data for the Compromised ECS Cards to co-conspirators

around the world.   On or about and between December 21 and 22, 2012, the Compromised

ECS Cards were used in approximately 5,000 transactions to withdraw approximately $5

million in at least 20 countries, including in the United States and, among other places therein,

in the Eastern District of New York.   This scheme is hereinafter referred to as the

"ECS/RAKBANK Unlimited Operation."



9.   In online communications on or about January 8, 2013,

FINDIKOGLU and          were paid via wire transfer, among other methods.   At

FINDIKOGLU's and          direction, cash proceeds from fraudulent withdrawals made

in New York in the course of the ECS/RAKBANK Unlimited Operation were personally

transported from Queens, New York to co-conspirators in Romania by New York-based

cashers who participated in the operation.

IV.   The enStage/Bank Muscat Unlimited Operation

10.   In or about February 2013, enStage, a payment processor based in

California, was the victim of a network intrusion.   As a result, the defendants ERCAN

FINDIKOGLU and          together with others, were able to obtain unauthorized

5

access to an enStage prepaid debit card database, among other things. FINDIKOGLU and ▮▮▮▮▮ together with others, then breached security protocols and increased the withdrawals limits on prepaid cards issued by Bank Muscat in Oman (the "Compromised enStage Cards"). FINDIKOGLU and ▮▮▮▮▮ together with others, distributed the data for the Compromised enStage Cards to co-conspirators around the world. On or about and between February 19 and 20, 2013, the Compromised enStage Cards were used in approximately 36,000 transactions to withdraw approximately $40 million in approximately 24 countries, including in the United States and, among other places therein, in the Eastern District of New York. This scheme is hereinafter referred to as the the "enStage/Bank Muscat Unlimited Operation."

11.     In online communications on or about February 19, 2013, the defendant ERCAN FINDIKOGLU provided data for one of the compromised enStage cards to a co-conspirator whose identity is known to the Grand Jury ("John Doe #1"). FINDIKOGLU told John Doe #1 that he had access to the enStage network, stating "im filling all the cards with money. it takes time to load them one by one." FINDIKOGLU also provided transaction logs taken directly from the enStage system to John Doe #1.

12.     On or about February 20, 2013, the defendant ERCAN FINDIKOGLU warned John Doe #1, who was planning to travel to the United States just days after the enStage/Bank Muscat Unlimited Operation, "dont even go to usa. u will get arrested . . . secret service headquarters all there in NY."

V.     Efforts to Evade Law Enforcement Scrutiny and Destroy Electronic Evidence

13.     The defendants ERCAN FINDIKOGLU and ▮▮▮▮▮▮▮▮▮ together with others, used a variety of methods to evade law enforcement scrutiny of their criminal

6

activities.   Among other methods, FINDIKOGLU and ███████ used proxy servers and

virtual private networks to disguise their true identities and physical locations, frequently

changed their online communication accounts and deleted evidence from their computers.

For example, after the FIS/American Red Cross Unlimited Operation, FINDIKOGLU told

John Doe #1 that he kept "0 card in [his] pc [personal computer]" because he was "scared" that

the "fbi can come after" him.

14.   On or about March 28, 2013, the arrest of a casher in New York who

participated in the ECS/RAKBANK Unlimited Operation and the enStage/Bank Muscat

Unlimited Operation was made public and was the subject of press reports.   Shortly

thereafter, on or about April 3, 2013, the defendant ERCAN FINDIKOGLU told John Doe #1

to "delete your account and use proxy while u do. ... remove your accounts[,] change all the

stuff while u r removing them." ████████████████████

███████████████████████████████████████

███████████████████████████

## COUNT ONE
### (Computer Intrusion Conspiracy)

15.   The allegations contained in paragraphs 1 through 14 are realleged and

incorporated as if fully set forth in this paragraph.

16.   In or about and between January 2010 and July 2013, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ████████

████████████████████████████████ together with others, did knowingly and

with intent to defraud conspire to access without authorization one or more protected

7

computers, to wit: computers belonging to FIS, ECS, enStage and other payment processors

and financial service providers, and by means of such conduct further the intended fraud and

obtain something of value, to wit: United States and foreign currency, contrary to 18 U.S.C.

§ 1030(a)(4).

17.    In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU and

███████████████  together with others, committed and caused to be committed, among others,

the following:

## OVERT ACTS

(a)    On or about and between February 27, 2011 and March 5, 2011,

both dates being approximate and inclusive, the defendant ERCAN FINDIKOGLU obtained

unauthorized access to FIS transaction logs.

(b)    ████████████████████████████████

████████████████████████████████████████

(c)    On or about February 19, 2013, the defendant ERCAN

FINDIKOGLU manipulated account balances for the Compromised enStage Cards.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (FIS Computer Intrusion)

18.    The allegations contained in paragraphs 1 through 14 are realleged and

incorporated as if fully set forth in this paragraph.

8

19.    In or about and between January 2011 and March 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████ ███████████████████████████ together with others, did knowingly and with intent to defraud access without authorization one or more protected computers, to wit: computers belonging to FIS, and by means of such conduct did further the intended fraud and obtain something of value, to wit: United States and foreign currency.

(Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A), 2 and 3551 <u>et seq.</u>)

COUNT THREE
(ECS Computer Intrusion)

20.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

21.    In or about and between November 2012 and January 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████ ███████████████████████████ together with others, did knowingly and with intent to defraud access without authorization one or more protected computers, to wit: computers belonging to ECS, and by means of such conduct did further the intended fraud and obtain something of value, to wit: United States and foreign currency.

(Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A), 2 and 3551 <u>et seq.</u>)

9

## COUNT FOUR
(enStage Computer Intrusion)

22.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

23.    In or about and between January 2013 and March 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ together with others, did knowingly and with intent to defraud access without authorization one or more protected computers, to wit: computers belonging to enStage, and by means of such conduct did further the intended fraud and obtain something of value, to wit: United States and foreign currency.

(Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A), 2 and 3551 et seq.)

## COUNT FIVE
(Wire Fraud Conspiracy)

24.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

25.    In or about and between January 2010 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud FIS, ECS, enStage and other payment processors and financial service providers, and to obtain money and property by

10

means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate and international wire transfers, transfers of electronic currency, emails, instant messages and SMS/text messages, and remotely accessing the computers of FIS, enStage and other payment processors and financial service providers in the United States from abroad, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT SIX
### (Bank Fraud Conspiracy)

26.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

27.    In or about and between January 2011 and March 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and

together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud JPMorgan Chase, a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets and other property owned by, and under the custody and control of, JPMorgan Chase, by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

11

## COUNT SEVEN
(Bank Fraud)

28.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

29.     In or about and between January 2011 and March 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████ ████████████████████████████ together with others, did knowingly and intentionally execute a scheme and artifice to defraud JPMorgan Chase, a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets and other property owned by, and under the custody and control of, JPMorgan Chase, by means of materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNT EIGHT
(Conspiracy to Commit Access Device Fraud)

30.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

31.     In or about and between January 2010 and July 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████ ████████████████████████████ together with others, did knowingly and with intent to defraud conspire to (a) produce, use and traffic in one or more counterfeit access

devices, to wit: the Compromised Cards and other compromised credit and debit card account numbers, (b) traffic in and use one or more unauthorized access devices, to wit: the Compromised Cards and other compromised credit and debit card account numbers, during one or more one-year periods, and by such conduct obtain things of value aggregating $1,000 or more, to wit: United States and foreign currency, during such period, (c) possess fifteen or more devices which were counterfeit and unauthorized access devices, to wit: the Compromised Cards and other compromised credit and debit card account numbers, and (d) effect transactions with one or more access devices issued to one or more other persons, to wit: the Compromised Cards and other compromised credit and debit card account numbers, to receive payments and other things of value, to wit: United States and foreign currency, during one or more one-year periods, the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate and foreign commerce, contrary to Title 18, United States Code, Sections 1029(a)(1), 1029(a)(2), 1029(a)(3) and 1029(a)(5).

32.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU and ████████████ together with others, committed and caused to be committed, the following:

## OVERT ACTS

(a)    On or about February 27, 2011, a co-conspirator whose identity is known to the Grand Jury ("CC-1") provided data for a Compromised FIS Card to an individual in Brooklyn, New York.

(b)     On or about and between February 27 and February 28, 2011, both dates being approximate and inclusive, the defendant ERCAN FINDIKOGLU provided data for Compromised FIS Cards to John Doe #1.

(c)     ████████████████████████████████████

████████████████████████████████████████████

(d)     On or about December 22, 2012, a co-conspirator whose identity is known to the Grand Jury ("CC-2") conducted approximately four withdrawals totaling approximately $3,212 using data for one of the Compromised ECS Cards from an ATM located in New York, New York.

(e)     On or about February 19, 2013, the defendant ERCAN FINDIKOGLU provided data for Compromised enStage Cards to John Doe #1.

(f)     ████████████████████████████████████

████████████████████████████████████████████

(Title 18, United States Code, Sections 1029(b)(2) and 3551 et seq.)

COUNT NINE
(Trafficking in Unauthorized Access Devices – FIS Unlimited Operation)

33.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

34.     In or about February 2011, in the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ████████████████████████████████ together with others, did

14

knowingly and with intent to defraud traffic in and use one or more unauthorized access devices, to wit: Compromised FIS Cards, during a one-year period, and by such conduct did obtain things of value aggregating $1,000 or more, to wit: United States and foreign currency, during such period, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(2), 1029(c)(1)(A)(i), 2 and 3551 et seq.)

COUNT TEN
(Effecting Transactions with Unauthorized Access Devices – FIS Unlimited Operation)

35. The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

36. In or about February 2011, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████████████████████████████ together with others, did knowingly and with intent to defraud effect transactions with one or more access devices issued to one or more other persons, to wit: Compromised FIS Cards, to receive payments and other things of value, to wit: United States and foreign currency, during a one-year period, the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii), 2 and 3551 et seq.)

## COUNT ELEVEN
(Trafficking in Unauthorized Access Devices – ECS Unlimited Operation)

37.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

38.    In or about December 2012, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████████████████████████ together with others, did knowingly and with intent to defraud traffic in and use one or more unauthorized access devices, to wit: Compromised ECS Cards, during a one-year period, and by such conduct did obtain things of value aggregating $1,000 or more, to wit: United States and foreign currency, during such period, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(2), 1029(c)(1)(A)(i), 2 and 3551 et seq.)

## COUNT TWELVE
(Effecting Transactions with Unauthorized Access Devices – ECS Unlimited Operation)

39.    The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

40.    In or about December 2012, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████████████████████████ together with others, did knowingly and with intent to defraud effect transactions with one or more access devices issued to another person or persons, to wit: Compromised ECS Cards, to receive payments and other things of value, to wit: United States and foreign currency, during a one-year period, the

16

aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii), 2 and 3551 et seq.)

### COUNT THIRTEEN
(Trafficking in Unauthorized Access Devices – enStage Unlimited Operation)

41.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

42.     In or about February 2013, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ███████████████████████████ together with others, did knowingly and with intent to defraud traffic in and use one or more unauthorized access devices, to wit: Compromised enStage Cards, during a one-year period, and by such conduct did obtain things of value aggregating $1,000 or more, to wit: United States and foreign currency, during such period, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(2), 1029(c)(1)(A)(i), 2 and 3551 et seq.)

### COUNT FOURTEEN
(Effecting Transactions with Unauthorized Access Devices – enStage Unlimited Operation)

43.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about February 2013, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator,"

17

and █████████████████████████████████████ together with others, did

knowingly and with intent to defraud effect transactions with one or more access devices

issued to another person or persons, to wit: Compromised enStage Cards, to receive payments

and other things of value, to wit: United States and foreign currency, during a one-year period,

the aggregate value of which was equal to or greater than $1,000, in a manner affecting

interstate and foreign commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii), 2 and

3551 et seq.)

## COUNT FIFTEEN
(Money Laundering Conspiracy)

45.     The allegations contained in paragraphs 1 through 14 are realleged and

incorporated as if fully set forth in this paragraph.

46.     In or about and between January 2011 and April 2013, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and █████████

█████████████████████████████████ together with others, did knowingly and

intentionally conspire to transport, transmit and transfer monetary instruments and funds from

one or more places in the United States to one or more places outside the United States (a) with

the intent to promote the carrying on of specified unlawful activity, to wit: the crimes charged

in Counts Seven through Fourteen, contrary to Title 18, United States Code, Section

1956(a)(2)(A), and (b) knowing that the monetary instrument and funds involved in the

transportation, transmission and transfer represented the proceeds of some form of unlawful

18

activity and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit: the crimes charged in Counts Seven through Fourteen, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT SIXTEEN
(Money Laundering)

47.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

48.     In or about January 2013, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as "Segate" and "Predator," and ██████████████████████████ together with others, did knowingly and intentionally transport, transmit and transfer monetary instruments and funds from one or more places in the United States, to wit: New York, to one or more places outside the United States, to wit: Romania, with the intent to promote the carrying on of specified unlawful activity, to wit: the crimes charged in Counts Eight, Eleven and Twelve.

(Title 18, United States Code, Section 1956(a)(2)(A), 2 and 3551 et seq.)

### COUNT SEVENTEEN
(Obstruction of Justice Conspiracy)

49.     The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between February 2011 and July 2013, within the Eastern District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also

19

known as "Segate" and "Predator," and ███████████████████████

███████████ together with others, did knowingly and intentionally conspire to (a) use

intimidation, threaten and corruptly persuade one or more other persons, to wit: John Doe #1,

with intent to cause and induce such person to alter, destroy, mutilate and conceal one or more

objects, to wit: computers, phones and other electronic devices, with intent to impair the

integrity and availability of such objects for use in an official proceeding, to wit: a Federal

Grand Jury in the Eastern District of New York, (b) alter, destroy, mutilate and conceal one or

more records, documents and other objects, to wit: computers, phones and other electronic

devices and electronic records, with the intent to impair the integrity and availability of such

objects, documents and records for use in said official proceeding, and (c) otherwise obstruct,

influence and impede said official proceeding, contrary to Title 18, United States Code,

Sections 1512(b)(2)(B), 1512(c)(1) and 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## COUNT EIGHTEEN
### (Obstruction of Justice)

51.     The allegations contained in paragraphs 1 through 14 are realleged and

incorporated as if fully set forth in this paragraph.

52.     In or about and between March 2013 and April 2013, within the Eastern

District of New York and elsewhere, the defendants ERCAN FINDIKOGLU, also known as

"Segate" and "Predator," and ███████████████████████████

together with others, did knowingly and intentionally alter, destroy, mutilate and conceal one

or more records, documents and other objects, to wit: computers, phones and other electronic

devices and electronic records, with the intent to impair the integrity and availability of such

20

objects, documents and records for use in an official proceeding, to wit: a Federal Grand Jury in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(b)(2)(B), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH FOUR

53.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Four, the government will seek forfeiture in accordance with (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, and (b) Title 18, United States Code, Section 1030(i)(1), which requires any person convicted of such offenses to forfeit (i) any personal property used or intended to be used to commit or facilitate the commission of such offenses, and (ii) any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

54.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

21

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1030(i)(2), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS FIVE THROUGH SEVEN

55.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Five through Seven, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

56.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

       (c)     has been placed beyond the jurisdiction of the court;

       (d)     has been substantially diminished in value; or

       (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

22

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(2)(A); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS EIGHT THROUGH FOURTEEN

57.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Eight through Fourteen, the government will seek forfeiture in accordance with (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, and (b) Title 18, United States Code, Section 1029(c)(1)(C), which requires any person convicted of such offenses to forfeit any personal property used or intended to be used to commit such offenses.

58.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), to seek

23

forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS FIFTEEN AND SIXTEEN

59. The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts Fifteen and Sixteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit all property, real or personal, involved in such offenses, or any property traceable to such property.

60. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

24

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS SEVENTEEN AND EIGHTEEN

61.  The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts Seventeen and Eighteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

62.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

25

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))


A TRUE BILL

_____
FOREPERSON


_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

26